Case No. 24-10449

# United States Court of Appeals

*for the*

# Eleventh Circuit

---

Florida Virtual School,

*Plaintiff/Appellant,*

v.

K12 Inc. (n/k/a Stride, Inc.) and K12 Florida LLC,

*Defendants/Appellees.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
Case No. 6:20-cv-02354-GAP-EJK

## BRIEF OF APPELLEES
## K12 INC. (n/k/a STRIDE, INC.) and K12 FLORIDA LLC

Daniel C. Johnson
CARLTON FIELDS, P.A.
200 S. Orange Avenue,
Ste. 1000
Orlando, Florida 32801-3456
(407) 849-0300
djohnson@carltonfields.com

Steven P. Hollman
Abraham Shanedling
Maria-Laura Coltre
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
2099 Pennsylvania Ave., N.W., Ste. 100
Washington, D.C. 20006-6801
(202) 747-1941
shollman@sheppardmullin.com
ashanedling@sheppardmullin.com
mcoltre@sheppardmullin.com

(Additional counsel listed on signature page)

*Counsel for K12 Inc. (n/k/a Stride, Inc.), and K12 Florida LLC*

*Florida Virtual School v. K12 Inc., et al.*
Case No. 24-10449

### <u>CERTIFICATE OF INTERESTED PERSONS AND CORPORATE</u>
### <u>DISCLOSURE STATEMENT</u>

Pursuant to Rule 26.1 of the Federal Rules of Civil Procedure and Eleventh Circuit Rule 26.1-1, the undersigned counsel for Defendants-Appellees K12 Inc. (n/k/a Stride, Inc.), and K12 Florida LLC, certify that, to the best of our knowledge, the following is a complete list of all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this particular case or appeal, including subsidiaries, conglomerates, affiliates, and parent corporations, and including any publicly held company that owns 10% or more of the party's stock:

1. Barto Hill, Suzanne

2. Bishop, Thomas E.

3. Bishop Page & Mills, PLLC

4. Carlton Fields, P.A.

5. Coltre, Maria-Laura

6. Culley, Salley R.

7. D'Agata, David J.

8. Dao, Anne-Marie

9. Dietzen, Leonard J.

10. Florida Virtual School

11. Guzman, Luis R.

*Florida Virtual School v. K12 Inc., et al.*
Case No. 24-10449

12. Hollman, Steven P.

13. Johnson, Daniel C.

14. K12 Florida LLC

15. K12 Management, Inc.

16. Kidd, Embry J. – United States Magistrate Judge

17. Luther, Stephen H.

18. Luther Law PLLC

19. Mason, Kyle W.

20. Presnell, Gregory A. – Senior United States District Court Judge

21. Roth, Katharine

22. Rumberger, Kirk & Caldwell, P.A.

23. Shanedling, Abraham J.

24. Sheppard, Mullin, Richter & Hampton LLP

25. Spencer-Davis, Charles H.

26. Stride, Inc. (f/k/a K12 Inc.) (NYSE: "LRN")

27. Yost, Eleanor M.

Stride, Inc. is not aware of any publicly traded corporation or other publicly held entity that owns ten percent or more of its stock.

## STATEMENT REGARDING ORAL ARGUMENT

With this appeal, Appellant Florida Virtual School ("FLVS") continues its effort to obstruct legitimate marketplace competition by claiming monopoly control over generic words commonly used in a crowded industry to describe virtual or online educational services in Florida and by seeking hyperbolic damages without any evidence of causative loss to it or undue gain to Appellees K12 Inc. (n/k/a Stride, Inc.) and K12 Florida LLC (together "Stride").

This was a "marathon trademark dispute," as the district court recognized. But after affording FLVS more than ample opportunity over three years in extensive litigation to develop the record and substantiate its sweeping allegations of "considerable" consumer confusion and deception and alleged damages , the district court thoroughly, thoughtfully, and correctly disposed of all of FLVS's claims. Although FLVS's appellate arguments – which Stride believes lack merit – call for application of settled law to a full factual record, Stride respectfully requests oral argument to aid the Court in its review given the sheer number of issues FLVS has raised in this appeal (*nine*) and the lengthy record from the district court.

## **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ................................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ................................ i

TABLE OF CONTENTS................................................................ ii

TABLE OF AUTHORITIES ........................................................ iv

STATEMENT OF JURISDICTION................................................1

STATEMENT OF THE ISSUES....................................................1

STATEMENT OF THE CASE.......................................................4

      A.    Statement of the Facts ...........................................4

      B.    Course of Proceedings Below .............................13

      C.    Standards of Review............................................31

SUMMARY OF ARGUMENT .....................................................32

ARGUMENT ............................................................................34

I.    The District Court Did Not Clearly Err In Finding FLVS Did Not Present Evidence Of Actual Damages And Was Not Entitled To A Jury...........................................................................34

      A.    The District Court Did Not Clearly Err In Finding No Evidence FLVS Suffered Harm Caused By Stride. .............................34

      B.    The District Court Did Not Abuse Its Discretion By Excluding Gallogly's Speculative Lost Profits Opinions. ..................38

      C.    The District Court Properly Struck FLVS's Jury Demand. ..................................................................41

II.    The District Court Properly Denied FLVS's False Advertising Claim...........................................................................42

A.  The District Court Did Not Abuse Its Discretion In Excluding Stec's Report. ....................................................42

B.  The District Court Did Not Err In Finding Nothing Literally False About The Checklist. ...................................44

III.  The District Court Did Not Clearly Err In Finding No Likelihood Of Confusion. ...............................................................46

A.  FLVS's Marks Are Weak And Descriptive. .......................47

B.  FLVS Presented No Credible Evidence Of Actual Confusion. ..........................................................................50

C.  FLVS Lacked Any Evidence Of Ill-Intent. .......................53

D.  The Other Similarity Factors Did Not Move The Needle.................55

IV.  The District Court Correctly Disposed Of FLVS's Claim Regarding The flva.com Redirect.............................................57

V.  The District Court Did Not Abuse Its Discretion In Limiting Disgorgement.................................................................60

VI.  FLVS Presents No Valid Basis For Case Reassignment.............................62

CONCLUSION .................................................................64

CERTIFICATE OF COMPLIANCE .......................................66

CERTIFICATE OF SERVICE ..............................................66

# TABLE OF AUTHORITIES

Page(s)

## Cases

\* *AcryliCon USA, LLC v. Silikal GMBH & Co.*,
  46 F.4th 1317 (11th Cir. 2022) ....................................................3, 63

*AmBrit, Inc. v. Kraft, Inc.*,
  812 F.2d 1531 (11th Circ. 1986) ........................................................52

*Anderson v. Bessemer City*,
  470 U.S. 564 (1985).............................................................................52

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986).............................................................................32

*Buland v. NCL (Bahamas) Ltd*,
  992 F.3d 1143 (11th Cir. 2021) ....................................................38, 42

*Caron v. NCL (Bahamas), Ltd.*,
  910 F.3d 1359 (11th Cir. 2018) ..........................................................57

*Chapman v. Procter & Gamble Distributing, LLC*,
  766 F.3d 1296 (11th Cir. 2014) .....................................31, 32, 38, 41

\* *Comparelli v. Republica Bolivariana De Venezuela*,
  891 F.3d 1311 (11th Cir. 2018) ....................................................62, 63

*Compulife Software Inc. v. Newman*,
  959 F.3d 1288 (11th Cir. 2020) ..........................................................44

*CSX Transp., Inc. v. State Bd. of Equalization*,
  521 F.3d 1300 (11th Cir. 2008) ..........................................................64

*Custom Mfg. v. Midway*,
  508 F.3d 641 (11th Cir. 2007) ........................................46, 47, 52, 56

\* *Daubert v. Merrell Dow. Pharms., Inc.*,
  509 U.S. 579 (1993)..................................... 17, 21, 23, 38, 44, 60, 64

\* *Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*,
  830 F.3d 1242 (11th Cir. 2016) ............. 31, 32, 46, 47, 48, 49, 50, 52, 53, 55, 57

*Flood v. Young Woman's Christian Ass'n of Brunswick, Georgia, Inc.*,
  398 F.3d 1261 (11th Cir. 2005) .........................................................59

*Florida Virtual School v. K12, Inc.*,
  148 So. 3d 97 (Fla. 2014) ...................................................................7

*Florida VirtualSchool v. K12, Inc.*,
  735 F.3d 1271 (11th Cir. 2013) ..........................................................7

*Florida VirtualSchool v. K12, Inc.*,
  773 F.3d 233 (11th Cir. 2014) ............................................................7

\* *Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*,
  921 F.3d 1343 (11th Cir. 2019) ...................................... 1, 31, 32, 36, 41, 46, 50

*Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*,
  299 F.3d 1242 (11th Cir. 2002) .............................................43, 44, 45

*Kilpatrick v. Breg, Inc.*,
  613 F.3d 1329 (11th Cir. 2010) ........................................................44

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999)...........................................................................43

*Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*,
  316 U.S. 203 (1942)...........................................................................61

\* *Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*,
  496 F.3d 1231 (11th Cir. 2007) .......................................34, 35, 38, 39

*Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*,
  No.1:04-cv-1082-TWT, 2006 WL 1663357 (N.D. Ga. June 14, 2006).......35, 40

*Optimum Techs., Inc. v. Home Depot U.S.A., Inc.*,
  217 F. App'x 899 (11th Cir. 2007) ...................................................54

*Osmose, Inc. v. Viance, LLC*,
  612 F.3d 1298 (11th Cir. 2010) ........................................................45

*PlayNation Play Sys., Inc. v. Velex Corp.*,
  924 F.3d 1159 (11th Cir. 2019) ........................................................62

\* *St. Charles Mfg. Co. v. Mercer*,
  737 F.2d 891 (11th Cir. 1983) .............................................................31, 34, 37

*Stargel v. SunTrust Banks, Inc.*,
  791 F.3d 1309 (11th Cir. 2015) ...........................................................63

*Suntree Techs., Inc. v. Ecosense Int'l, Inc.*,
  693 F.3d 1338 (11th Cir. 2012) ...................................................32, 54

*Vital Pharms., Inc. v. Monster Energy Co.*,
  No.21-13264, 2022 WL 3083273 (11th Cir. Aug. 3, 2022).............................42

*Welding Servs., Inc. v. Forman*,
  509 F.3d 1351 (11th Cir. 2007) ...................................................52, 54

## Statutes

Fla. Stat. § 1002.45(1)(a)(3) .......................................................4

Fla. Stat. § 1002.45(1)(b)(1) .......................................................4

## Rules

Fed. R. Civ. P. 52(a)(6)........................................................50, 53

Fed. R. Evid. 702 ...............................................................38

Fed. R. Evid. 702(a)-(b).........................................................42

## Other Authorities

1 *McCarthy on Trademarks and Unfair Competition* (5th ed.)
  § 11:85 ........................................................................48
  § 11:92 ........................................................................63
  § 32:163 .......................................................................43

## STATEMENT OF JURISDICTION

Stride agrees with FLVS's jurisdictional statement.

## STATEMENT OF THE ISSUES

In 'shotgun' fashion, FLVS has raised at least nine issues on appeal:

1.    Lanham Act actual damages claims require specific evidence the plaintiff suffered lost profits and defendant's actions proximately caused the loss. Did the district court clearly err in granting Stride judgment on FLVS's claim for actual damages when FLVS failed to produce or identify any evidence of specific monetary loss caused by Stride?

2.    FLVS's damages expert, Daniel Gallogly, assumed as true all FLVS's liability and causation allegations, including that FLVS would have obtained *all* of Stride's student registrations and associated profits but for Stride's alleged infringement, without apportioning on a claim-by-claim basis. Did the district court abuse its discretion by excluding Gallogly's lost profits opinions as unreliable and unhelpful?

3.    Lanham Act claims for disgorgement of profits and injunctive relief are "equitable in nature" and do not carry a right to a jury trial. *Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1348, 1359 (11th Cir. 2019). After finding FLVS had "zero evidence of actual damages" and limiting FLVS to

injunctive relief and/or disgorgement, did the district court properly strike FLVS's jury demand?

4.    FLVS's expert, Dr. Jeffrey Stec, conducted a deception survey that did not present Stride's comparative Checklist in its marketplace conditions and assumed, rather than established, falsity and deception.  Did the district court abuse its discretion by excluding Stec's report as unhelpful and based on a misleading premise?

5.    Having properly excluded Stec (FLVS's only "evidence" of deception) and properly concluded there was nothing literally false in the challenged Checklist and no injury, did the district court err in granting Stride summary judgment on FLVS's false advertising claim?

6.    FLVS neither alleged, nor produced, any evidence supporting a claim that Stride's use of flva.com as a redirect constituted trademark infringement.  FLVS only advanced that contention as a "last-ditch attempt to salvage its damages claims."  Did the district court err in granting Stride summary judgment on FLVS's "infringement" claim regarding flva.com?

7.    After weighing contested evidence on each of the likelihood of confusion factors at trial, the district court found that FLVS's marks were inherently weak and descriptive; that there was no credible evidence of actual confusion caused

by Stride's use of Florida Online School ("FLOS"); and that there was no evidence of ill-intent by Stride.  Did the district court clearly err in its findings?

8.    FLVS presented no evidence of any infringement or deception statewide and outside of Florida.  Yet Gallogly assumed 100% of Stride's Florida and *nationwide* profits resulted from infringement and false advertising.  He even included revenue from a school about which FLVS admittedly had no claim.  Did the district court abuse its discretion in excluding Gallogly's disgorgement opinions and limiting FLVS's equitable remedy only to any profits Stride earned from FLOS between 2019 and 2021?

9.    Reassignment is a "severe" remedy reserved only for when a district judge "engaged in conduct that gives rise to the appearance of impropriety or a lack of impartiality." *AcryliCon USA, LLC v. Silikal GMBH & Co.*, 46 F.4th 1317, 1330 (11th Cir. 2022).  The district judge has presided over the parties' disputes for over a decade, issuing rulings for and against each party.  Is there any proper ground to reassign the case if remanded?

## STATEMENT OF THE CASE

Since 2011 – across two lawsuits, extensive discovery, multiple hearings, and a week-long trial – this dispute has commanded the attention of a district judge who carefully weighed an extensive record and competing claims in making findings and legal determinations. FLVS prevailed on Stride's counterclaims but lost on infringement, advertising, and contract claims when there was no credible evidence of consumer confusion, deception, or injury. On appeal, FLVS offers no good reason to disturb the district court's findings, or to reassign the case. This Court should affirm the district court's judgment.

### A.    Statement of the Facts

### 1.    The Parties' Businesses

In 1997, the Florida legislature created Florida Online High School to provide online education programs to Florida high school students. Doc.302:15;Doc.334:7-9;Doc.352-51:2-3.[1]   In 2001, the school was renamed Florida Virtual School ("FLVS"). Doc.302:15. FLVS's enacting statute mandated that every school district in Florida offer a "virtual instruction program," Fla. Stat. §§ 1002.45(1)(a)(3) & (b)(1), which the Florida Department of Education ("FLDOE") also refers to as "virtual schools," Doc.352-8:8;Doc.352-64;Doc.334:188-89. As a result, nearly

---

[1] Cites used herein, such as "Doc.352-51:2-3", refer to docket entry 352-51, pages 2 through 3.

every Florida school district offers an online educational program employing some form of "Virtual," "Virtual School," or "Online School" in the name, as do numerous private providers in Florida. Doc.334:190-94;Doc.337:93-97;Doc.338:77-78;Doc.342:152-53;Doc.352-52:9;Doc.352-80;Doc.352-81;Doc.352-82;Doc.352-84;Doc.352-85;Doc.352-86.

In 2003, K12 Inc., through its subsidiary, K12 Florida LLC, entered the Florida online education market as one of the first for-profit "virtual instruction programs" approved by FLDOE, serving the K-5 grades under the names FLORIDA VIRTUAL ACADEMY and FLORIDA VIRTUAL PROGRAM. Doc.302:15-16;Doc.352-4:2.

Although FLVS and Stride run Florida online schools, they operate and market to customers in fundamentally different ways. Doc.369:32-34. Unlike FLVS, Stride's customers – who actually purchase its products and services – are not parents and students but rather local school districts. Doc.369:32;Doc.337:23;Doc.342:145-46,149-50,180,193-97. Although Stride provides the teachers, curriculum, and web-based infrastructure to operate the online school, Stride ultimately is paid by the school districts it contracts with based on course completions. Doc.342:178. Stride therefore primarily markets its offerings to school districts (not individuals), and it does so under its national "K12.com" branding—not through school-specific advertising. Doc.369:32-34;Doc.342:145-

146,151,157-58,177-78,180,183-86,193-98,202-203.  Nor did Stride invest in in any search engine optimization/marketing ("SEO/SEM") for school programs. Doc.342:151,207,216-22.

### 2.    The Prior Dispute

In 2009, FLVS applied to register the mark FLORIDA VIRTUALSCHOOL with the U.S. Patent & Trademark Office ("USPTO").  Doc.351-15:139-56. However, the USPTO rejected FLVS's application because FLORIDA was geographically descriptive, VIRTUAL and SCHOOL were generic and descriptive, and combining such "generic or highly descriptive wording" did not make the marks unique or protectable.  Doc.351-15:130-36.  To overcome that rejection, FLVS swore in 2010 submissions that its marks had acquired distinctiveness through continuous and exclusive use in the marketplace, including in the "pre-kindergarten" levels—even though FLVS has admitted it has *never* provided pre-K services. Doc.351-15:123-27;Doc.289:14;Doc.334:113.

Accepting FLVS's representations, the USPTO in 2010 registered FLVS's trademarks (Registrations No. 3,830,765 and 3,873,393) but required FLVS to disclaim "VIRTUALSCHOOL" or "VIRTUAL SCHOOL" elements apart from all of its marks.  Doc.351-61;Doc.351-64.  As the USPTO explained, "[t]hird parties often use the wording 'VIRTUALSCHOOL' to describe online education services, similar to those listed in [FLVS's] identification of services," and the mere deletion

of space between "VIRTUAL" and "SCHOOL" "does not overcome the *merely descriptive nature of the wording*."  Doc.351-15:98-119 (emphasis added) (attaching examples of other "virtual schools" including in Florida).

Promptly after registering its trademark, FLVS sued Stride in 2011 in the Middle District of Florida, alleging that Stride's use of FLORIDA VIRTUAL ACADEMY/FLVA and FLORIDA VIRTUAL PROGRAM/FLVP in programs approved by the FLDOE infringed on FLVS's recently registered marks. Doc.302:16;Doc.350-14:1.  Stride denied FLVS's allegations and subsequently filed a Petition for Cancellation of FLVS's marks at the Trademark Trial and Appeal Board, claiming FLVS had committed fraud on the USPTO by falsely claiming exclusive use.  Doc.350-14:1;Doc.250-2.  After the district court (Judge Gregory Presnell) dismissed FLVS's complaint on standing grounds, FLVS appealed to this Court, which certified to the Florida Supreme Court the question whether FLVS had the authority under Florida law to sue to enforce its trademarks.  *Florida VirtualSchool v. K12, Inc.*, 735 F.3d 1271 (11th Cir. 2013).  The Florida Supreme Court recognized the marks were owned by the State but held that FLVS had the necessary statutory authority to enforce them.  *Florida Virtual School v. K12, Inc.*, 148 So. 3d 97 (Fla. 2014).  This Court then reversed and remanded for further proceedings.  *Florida VirtualSchool v. K12, Inc.*, 773 F.3d 233 (11th Cir. 2014). Accepting this Court's mandate, the district court reopened the case but ultimately

approved the parties' joint stipulation of dismissal with prejudice pursuant to a November 2015 settlement agreement ("Settlement Agreement") without any judgment or finding that Stride had infringed.  Doc.302:16;Doc.350-14;Doc.369:2.

Under the Settlement Agreement:

- There was "no admission of fault or liability," and FLVS "irrevocably release[d], acquit[ted], and forever discharge[d]" Stride "from any and all actions, causes of action, . . . [or] liabilities . . . of any kind or nature whatsoever, in equity or otherwise, whether known or unknown, . . . arising out of or relating in any way" to FLVS's infringement claims regarding the FLVA/FLVP names/acronyms. Doc.350-14:8-10.

- While Stride was required to cease using the FLVA/FLVP names/acronyms and associated URLs (such as flva.com), Stride was *permitted* to use "Florida" or "Virtual" in a mark separately or to make non-trademark use of those words, even in combination.  Doc.350-14:3,7;Doc.369:25.

- The parties included a list of "Approved Marks" (three of which contained the words "Florida" and "Online" together) and "Prohibited Marks." "Florida Online School" was *not* on the Prohibited List.  Doc.350-14:7-8, 16.  Stride was "not required to select a mark listed on Appendix A," and "there [was] no presumption against [Stride's] choice of a mark not listed."    Doc.350-14:8;Doc.369:2.

- Stride was to transfer domain names, including flva.com, by January 1, 2017, following a transitional period during which Stride could continue using the domains as redirect links to new websites.  Doc.350-14:3-5.  Stride's efforts to ensure cessation of the at-issue names and to transfer the domains were subject to "a standard of reasonableness."  Doc.350-14:5.

- The parties were to "negotiate in good faith in an effort to resolve [any future dispute] without litigation."  Doc.350-14:12.

Stride thereafter used the flva.com domain name as a redirect to its "Florida Cyber Charter Academy" ("FCCA") website, the new name for the FLVA and FLVP programs.  Doc.142-17:20-21.  Florida Cyber Charter Academy/FCCA was an "approved" mark under the Settlement Agreement.  Doc.350-14:16.

In April 2016, FLVS applied for five additional trademarks registrations – tellingly omitting reference to pre-K services – and the USPTO registered them in 2017 but with the same "VIRTUAL SCHOOL" disclaimers.  Doc.302:16-17;Doc.351-63;Doc.351-65;Doc.351-66;Doc.351-67.  The USPTO also accepted FLVS's declarations of incontestability for its 2010 trademarks.  Doc.369:11.

### 3.    The Current Dispute

In 2019, Stride contracted at arms-length with the Hendry County School District ("HCSD") to launch an online school named "Florida Online School" (FLOS)—a name not prohibited by the Settlement Agreement.

Doc.302:17;Doc.350-16;Doc.353:15-19;Doc.354:5-13;Doc.350-16.      Stride and

HCSD selected the FLOS name as a simple, descriptive naming convention—not to

use any goodwill claimed by FLVS.    Doc.369:25-26;Doc.342:150-58,160,215-

17;Doc.353:15,57-59.    Stride publicly opened the FLOS program in June 2019.

Doc.302:17;Doc.350-9;Doc.29-2.  The program brand – which was not registered –

looked like this:



Doc.369:6,28;Doc.351-68.  Consistent with Stride's corporate brand strategy, Stride

did not market FLOS.  Rather, Stride focused its advertising on the "K12" or "Stride"

corporate brand.  Doc.342:151,177-78,185-86,193-94,202-203.

FLVS's leadership was fully aware of FLOS as soon as it launched but raised

no    issues.          Doc.139-10:4-7;Doc.150-6:119;Doc.297:4;Doc.350-9;Doc.350-

10;Doc.352-29;Doc.352-32;Doc.352-47;Doc.351-30;Doc.334:186;Doc.337:50-

51,73-80.  Nor did FLVS complain to HCSD.  Doc. 354:12.  In fact, after COVID-

19 forced many students into online schooling in early 2020, FLVS's enrollments

ballooned.  At the beginning of 2021, FLVS's enrollments were "the highest [they]

ha[d] been in the organization's history." Doc.150-8:6;Doc.150-9:3;Doc.150-10:87-88,123-25;Doc.150-11:29.

In August 2020 – more than *fourteen months* after Stride launched FLOS – FLVS's counsel sent demand letters to Stride challenging the use of the name. Doc.337:77-79;Doc.342:163-65;Doc.369:2-3.

FLVS also complained about Stride's use of a PDF checklist (the "Checklist"), embedded several links deep in a Stride webpage, inviting consumers to print or otherwise use it when comparing the attributes of Stride's offerings to those of other online education providers. Doc.139-17;139-18:22-26,Doc.261:2-3,7-9. Once opened in a separate window, the Checklist showed two columns of checkboxes for each attribute offered. In the column marked "K12-Powered School," all of the boxes were checked; in the column marked "Other Online Learning Solutions," there were no check-marks. Doc.139-17:9. The instructions directly above the "View Checklist" button instructed users to "use this checklist to weigh your options" when "comparing [Stride] to other online learning solutions." Doc.139-17;Doc.139-18:28-31;Doc.261:7-8.

FLVS further complained for the first time that Stride had not transferred the flva.com domain to FLVS by the January 2017 deadline, even though: FLVS waited more than three years to raise the issue; Stride's continued use of flva.com as a

redirect was publicly knowable; and FLVS's participation was necessary to effect the transfer.  Doc.142-16:14;Doc.142-17:18-21;Doc.297:5.

Although Stride disagreed with FLVS's contentions, it took to heart the Settlement Agreement's requirement to "negotiate in good faith" to resolve disputes. Doc.350-14:12.  Therefore, it began "instantly" working with HCSD in the Fall of 2020 to change the name of the FLOS program "[a]s quickly as [it] could." Doc.342:163-69;Doc.369:2-3,26;Doc.353:51-52.  After conducting surveys, Stride renamed the program "Digital Academy of Florida" ("DAOF"), effective January 1, 2021, through a contractual amendment with HCSD.    Doc.302:17;Doc.352-46;Doc.352-72;Doc.342:149,163-169;Doc.353:44,51-52,59-63,83;Doc.354:13-16. Thus, within just a year, the FLOS program name was changed to DAOF prior to the 2021-2022 school year.  Doc.354:15-16;Doc.369:26.  In short, Stride's HCSD program only used the challenged FLOS name for two years: 2019-2021.[2]

Even though Stride did not use the flva.com domain name for any promotions, once FLVS complained, Stride immediately coordinated with FLVS to complete the transfer.    Doc.1:10;Doc.142-17:21;Doc.305-1:71-72;Doc.353:42-43.    As for the Checklist, even though Stride contended it was both literally true and a non-

---

[2] Notably, it took Stride less time to begin changing the FLOS name (two months) than it did for FLVS to complain about it (over 14 months) or for FLVS to rebrand its own "FLVS Global" offerings (almost two years).  Doc.369:26n.25;Doc.337:79.

misleading comparison tool, Stride removed reference to FLVS as an "other online learning solution" on the webpage leading to the Checklist.  Doc.1:10;Doc.142-17:10-12;Doc.261:3.

### B.    Course of Proceedings Below

#### 1.    FLVS's Complaint

Despite Stride's efforts to avoid a dispute, FLVS nevertheless sued Stride in December 2020, alleging trademark infringement, unfair competition, false advertising, and breach of the Settlement Agreement.  Doc.1.  FLVS alleged Stride's FLOS program names (which Stride already began changing months before FLVS filed suit) had caused and were causing "considerable market confusion"; that the Checklist was false advertising; and that Stride's (already remedied) delay in transferring the flva.com domain as well as the other alleged conduct breached the Settlement Agreement.  Doc.1:8-19.  FLVS claimed Stride's challenged actions had caused FLVS extensive monetary injury, had caused and would continue to cause irreparable harm, and claimed that FLVS was entitled to disgorge Stride's statewide and nationwide profits.  Doc.1:8-21.

FLVS did *not* assert any claim regarding Stride's FCCA program, to which the flva.com domain previously redirected.    Doc.1:8;Doc.168:8n.3;Doc.248:79-80(FLVS counsel stating "there's no reason to associate [Florida] Cyber Charter Academy, which is a completely different name, with Florida Virtual School" and

"[t]hat's why there's no allegation" and "why we've never objected to their use of those marks").

The case, originally assigned to Judge Anne Conway, was reassigned to Judge Presnell after FLVS notified the district court that the case was related to the prior litigation before him. Doc.2;Doc.6;Doc.15;Doc.16. FLVS did not object or seek reassignment from Judge Presnell.

Stride moved to dismiss FLVS's complaint, but the district court denied Stride's motion. Doc.17;Doc.25. Stride then filed an answer denying FLVS's allegations, along with counterclaims for declaratory relief. Doc.29. The district court granted FLVS's motion to dismiss those counterclaims. Doc.32;Doc.33;Doc.42.

Stride's discovery focused particularly on FLVS's claim that Stride's actions had *caused* "considerable market confusion and damage to FLVS" and "generated considerable revenue for [Stride]" in and outside of Florida. Doc.1:8,11,20. FLVS stood by its allegations, including in sworn interrogatory responses. Doc.139-24:4-10. FLVS even moved to compel burdensome discovery into Stride's competitively sensitive, national financial information, telling the district court it expected to reveal "*substantial* additional evidence of infringement, false advertising and other misconduct," Doc.52:2 (emphasis added)—a motion the district court granted.

-14-

Doc.65.  But after affording FLVS ample opportunity to substantiate its claims, the district court concluded FLVS had failed.

### 2.    FLVS's Damages Claims and Jury Demand

#### *FLVS's "Evidence" of Damages*

None of the individuals FLVS identified as purportedly having knowledge of its alleged injuries as a result of Stride's actions testified that they had any knowledge of FLVS sustaining any actual monetary damage (or of Stride profiting) therefrom.        Doc.139:20-21;Doc.139-1:3-7;Doc.139-19:7-9:Doc.139-20:3-5;Doc.139-21:3-7;Doc.139-26:5-6;Doc.139-27:9-11;Doc.139-28:4-5;Doc.150-6:119;Doc.150-12:71,204;Doc.212:11-14.      Nor did FLVS's Rule 30(b)(6) representative, Samuel Verghese.  Doc.139-23;Doc.139-24:3-6,9-16;Doc.305-1:73-78,180-85,277-80;Doc.305-2:19-23.

Instead, Verghese repeatedly testified that FLVS was relying on the opinions of its damages expert, Gallogly, as evidence of actual damage caused by Stride's alleged conduct.  Doc.139:12;Doc.139-23;Doc.139-24:3-6("I would say definitely we are relying on Mr. Gallogly and his report . . . to address that issue.");Doc.139-32:5-11;Doc.305:6-7;Doc.305-1:73-78,82-85.   Gallogly, however, *presumed* that Stride's alleged conduct caused FLVS damage without identifying or measuring any substantiating  evidence.     Doc.268:8-9,17-26;Doc.268-1:¶5;Doc.268-2:34-37,70-72,77-80,128-29,148,159,173,247,280-83.  Gallogly admitted he had "*zero actual*

*evidence*" of any damage to FLVS and merely assumed the facts alleged in FLVS's complaint were true.  Doc.268-1:¶¶5,18,22;Doc.268-2:166,282.  Gallogly made no effort to attribute damages to particular claims or to apportion damage based on actual evidence of compensable loss.    Doc.287:5n.6;Doc.268:9;Doc.268-2:86-87,99-100,249-50,288-92.  Instead, he purported to calculate two lumped-together types of damages: (1) assumed FLVS lost profits; and (2) disgorgement of Stride's *entire* statewide and nationwide revenues—not just in Hendry County, and not just from the discontinued use of the FLOS name.  Doc.268-1;¶¶22-27.

For his lost profits opinions, Gallogly "assum[ed] liability and causation." Doc.268:9;Doc.268-1:¶¶18,22;Doc.268-2:34-37,70-72,77-80,128-29,148-49,159,166.  Despite Stride not having even opened the FLOS program until 2019, and despite it changing that name to DAOF in 2021, Gallogly calculated lost profits "from Florida Online School" from December 2016, through June 2033—*i.e.* three years before the conduct began and 12 years after the name changed.  Doc.268-1:¶¶ 21,25,31-32.  Gallogly further assumed that every student who enrolled in Stride's HCSD program during the two years it was named FLOS would have, and could have, enrolled in FLVS (and completed that program) but for Stride's alleged misconduct.  Doc.268:17-26;Doc.268-1:¶¶29-44;Doc.268-2:124-44,172-75,191-97.

For his disgorgement opinions, Gallogly simply assumed, without apportioning or assessing any evidence linking Stride's challenged conduct to

profits, that 100% of Stride's total Florida and U.S.-based revenues were infringing, and then, based on that assumption, attempted to present Stride's total statewide and nationwide revenues from January 2017 onward as subject to disgorgement. Doc.268:10-11,27-29;Doc.268-1:¶63;Doc.268-2:247-57,281-82.     That included revenue from FCCA, even though that was an "approved" name under the Settlement Agreement and FLVS admitted it had no claim regarding FCCA. Doc.1:8;Doc.168:8n.3;Doc.248:79-80.    Gallogly was instructed to assume the "maximum amount of damage," Doc.268-2:133,280-82, which was clear from his conclusion: that FLVS was entitled to over *$6.2 billion* in Stride's profits, Doc.268-1:¶¶26,63;Doc.268-2:257-59.[3]

After completing discovery, Stride requested FLVS withdraw its claims for nationwide damages.  Doc.212-2.  When FLVS refused, Stride moved for sanctions in March 2023 for persisting in these claims for damages outside of Florida without any evidentiary support.  Doc.137;Doc.212.

Stride subsequently moved for summary judgment on FLVS's claims for actual damages/lost profits, disgorgement, and breach of contract, as well as to strike FLVS's jury demand in view of the absence of actual damages evidence. Doc.139:19-22,23-26,38-44;Doc.150;Doc.185.  Stride also filed a *Daubert* motion

---

[3] Stride presented information on deductible costs and losses via corporate witnesses and its rebuttal expert, Shirley Webster.  Doc.268-3:60-71;Doc.298.

to exclude Gallogly's opinions.  Doc.267;Doc.268.  FLVS opposed Stride's motions and cross-moved for summary judgment on, *inter alia*, its breach of contract claim. Doc.143;Doc.171;Doc.274.

### *The District Court's Rulings on Damages*

In August 2023, the district court exercised its gatekeeping function and granted Stride's motion to exclude Gallogly's opinions on actual damages/lost profits.  Doc.287.  Although the district court considered Gallogly qualified, it found his opinions "fail[ed] to meet even basic standards of reliability and helpfulness" because they were "entirely speculative" and based on "absolutely *no* evidentiary support" to "assume that [FLVS] would have obtained *all* of [Stride's] student registrations had [Stride] not engaged in allegedly unlawful conduct."   Doc.287:4-6;Doc.286:46-47.  Because Gallogly "ignore[d] the critical element of causation," the district court found his opinions were just a "simple math" exercise of assuming all Stride's registrations during the relevant two-year period were 'stolen' from FLVS; multiplying that number by the average tuition FLVS received per student; and multiplying the prior outcome by a twenty-two percent profit margin. Doc.287:5-6.

The district court found that "[t]he absurdity of Mr. Gallogly's methodology (or lack thereof) [was] compounded by his assumption that [FLVS's] 'lost profits' can be extrapolated over the next ten years – thru 2033 – notwithstanding the fact

that FLVS had no claim of infringement beyond 2022 – the year that [Stride] rebranded their product in response to [FLVS's] complaint." Doc.287:6n.7. That Gallogly "did not calculate the damages attributable to each claim further increase[d] the unreliability and unhelpfulness of his Report." Doc.287:5n.6. Having fully reviewed the record, the district court held that FLVS had "zero evidence of actual damages." Doc.287:6. With no damages for a jury to consider, the court held that any disgorgement remedy would be resolved at a bench trial because "[d]isgorgement is an equitable remedy for which there's no right to a jury trial." Doc.286:48;Doc.287:6-7;Doc.293.

The district court later issued an order excluding Gallogly's disgorgement opinions with "respect to revenue that [was] unrelated to the revenue [Stride] earned from [its] Hendry County program between 2019 and 2021" – "*i.e.*, during the two years [Stride] used 'Florida Online School' as the name for that program." Doc.295:6. While FLVS had argued that Gallogly should be allowed to opine on Stride's statewide and nationwide profits due to Stride's allegedly improper use of the flva.com domain, the district court found that "simply meritless" because FLVS had "combined and conflated its own allegations related to its trademark infringement claims with allegations related to its claim that [Stride] breached the parties' 2015 Settlement Agreement." Doc.295:4-5. Because "disgorgement is not a remedy for a breach of contract claim," the district court affirmed its earlier

"determin[ation] that there are no remaining issues which would be appropriate (or necessary) for a jury's consideration." Doc.295:2,5.

In September 2023, the district court granted Stride summary judgment on FLVS's breach of contract claim, finding FLVS had "offered no evidence of actual damages," and the "contractual breach was technical in nature and caused no measurable harm to [FLVS]." Doc.297:8-9. Nor was "a solitary misprinted news article . . . sufficient to show damage from [Stride's] tardy relinquishment of the FLVA.com domain." Doc.297:8n.6. Finally, the district court, in its discretion, determined that even a nominal damage award was inappropriate. Doc.297:8-9.[4]

FLVS then moved for reconsideration of the district court's rulings on FLVS's damages claims and jury demand, arguing that "clarity" was needed because the court had not entered summary judgment on those issues. Doc.299. FLVS requested an advisory jury on *its* remaining equitable claims, while proposing that *Stride's* remaining equitable counterclaims and defenses be tried without a jury. Doc.299:15. Stride opposed FLVS's motion, arguing that to the extent clarification was necessary, the district court should simply enter a further summary judgment order. Doc.305:20.

---

[4] The ruling obviated the need to adjudicate Stride's defenses, including avoidable harm, failure to mitigate, laches, and breach of the Settlement Agreement's standard of reasonableness in FLVS demanding damages for delay in the transfer it could have effected simply by asking.

-20-

The district court denied FLVS's motion as "patently without merit" because FLVS "cit[ed] to no new evidence or law" and instead had made "the sophomoric argument that because [FLVS purportedly] ha[d] evidence of confusion, it necessarily follow[ed] that it ha[d] been damaged."  Doc.306:1-3.  FLVS had "regurgitat[ed] the same unpersuasive evidence of confusion that it ha[d] already presented through its summary judgment and *Daubert* papers," and "[a]mong the thousands of pages filed on this docket, . . . the Court ha[d] not seen one sentence that genuinely attempt[ed] to demonstrate or calculate actual damages."  Doc.306:3-4.  Because FLVS's only remaining remedies were equitable, the court granted Stride summary judgment on FLVS's actual damages claims and affirmed denial of FLVS's jury demand.  Doc.306:2-4,6.[5]

The district court additionally rejected FLVS's argument that Stride's use of the flva.com domain as a redirect constituted trademark infringement.  Doc.306:4-7.  The court found that in none of FLVS's filings had it "based its trademark infringement arguments on [Stride's] use of the FLVA.com domain."  Doc.306:4-5.  Moreover, the court held that FLVS's claim regarding any confusion over flva.com

---

[5] The district court did not issue "*sua sponte* grants of summary judgment" on FLVS's damages claims and  jury demand.  Br. at 19.  Stride moved for summary judgment on those issues, and FLVS had a full opportunity to respond.  Doc.139:20-22,23-26,38-44;Doc.150;Doc.171;Doc.176;Doc.185;Doc.268;Doc.274.

was released in the parties' Settlement Agreement.  Doc.306:5-6.[6]  Accordingly, the court held (again) that any "disgorgement remedy only applie[d] to trademark infringement claims regarding [FLVS's] marks in Florida" between 2019 and 2021. Doc.306:6-7.

### 3.    FLVS's False Advertising Claim

FLVS's corporate representative could not identify anything literally false about the Checklist.  Doc.139-32:15-18;Doc.261:12.  Instead, FLVS relied on Dr. Jeffrey Stec, who conducted a Florida-only survey on whether Stride's "*use of false and misleading statements*" in the Checklist had "*increased* the likelihood of confusion that [Stride's] customers would enroll their children into the online educational programs."  Doc.170-2:4 (emphasis added).

Stec concluded that "18.3% of respondents believed the alleged false and misleading statements in the comparison checklist . . . indicated the features that [Stride's] schools have that other online learning solutions do not have."  Doc.170-2:30.  Stec further concluded that 14.3% of respondents were either "Very Likely" or "Somewhat More Likely" to enroll their children in Stride's programs "due to the alleged false and misleading statements" in the Checklist."  Doc.170-2:30.  Notably, as instructed by FLVS's counsel, Stec surveyed only parents in *Florida*, despite

---

[6] FLVS offered no survey or methodology for separating alleged confusion related to permissible transitional use of the domain as a redirect from alleged confusion it attributed to the delay in effecting the transfer.

FLVS's claim for Stride's nationwide profits.  Doc.170-2:4,9-10;Doc.170-3:144-45;Doc.248:37-38.[7]  Also, despite Stec's reference to "false . . . statements" in the Checklist, he too was unable to identify anything literally false.  Doc.170-3:115-125,202.

Stride moved for summary judgment on FLVS's false advertising claim and filed a *Daubert* motion to exclude Stec's opinions.  Doc.139:22-28,44;Doc.170;Doc.185:4-7.  FLVS opposed Stride's motions.  Doc.171;Doc.181.

During an evidentiary hearing on Stride's *Daubert* motion to exclude his opinions, Stec admitted that as to Time4Learing (one of the "other online learning solutions" identified on the webpage leading to the Checklist (Doc.139-17:6,8)), the purported "statements" on the Checklist were *literally true*, because Time4Learning is a curriculum seller that, unlike Stride, does not offer live classes, certified teachers, transcripts, or degrees.  Doc.248:9-17,30-37.

The district court subsequently granted Stride's motion to exclude Stec and granted Stride summary judgment on FLVS's false advertising claim.  Doc.261.  The court found Stec's survey was "flawed" and "based upon a misleading premise" because it assumed, rather than demonstrated, that "the Checklist contain[ed] false and misleading statements" and "ultimately portray[ed] [Stride's] website and the

---

[7] Stride engaged Sarah Butler to prepare an expert rebuttal to Stec's report, which she found biased and flawed.  Doc.170-1.

Checklist out of context." Doc.261:7-10. In "reality," because the website asked readers to "weigh your options" when comparing Stride to generic "other online learning solutions" – and then opened the Checklist as a separate PDF to print or otherwise use in searching – the court recognized that the Checklist was merely a "marketing tool inviting the reader to compare the features of [Stride's] program with competing online educational programs." Doc.261:7-9.

The district court held that "[t]here can be no good faith contention that the corresponding blank checkboxes 'state' that *none* of Defendants' competitors, including [FLVS], possess *any* of those attributes, especially when viewed in the full context of the website." Doc.261:12. Indeed, "the website and the Checklist make clear that the blank checkboxes cannot be attributed to any one competitor." Doc.261:8n.6. The court held that "[t]he only 'statements' in the checklist are the features offered by [Stride], represented by the boxes," and there was "simply no evidence in the record that these statements are literally false," that they deceived consumers, or that FLVS "would suffer . . . harm." Doc.261:9,12-13. Rather, accepting FLVS's premise "would basically make almost all marketing illegal in the United States." Doc.248:50-56. Accordingly, because "no admissible evidence showing consumer deception ha[d] been offered and the advertisement in question [was] not literally false," the court held that FLVS's false advertising claim "cannot stand." Doc.261:13.

-24-

### 4.    FLVS's Infringement Claims

#### *FLVS's Evidence*

FLVS chose not to conduct any trademark survey to measure likelihood of confusion.  Doc.297:18.  So to test FLVS's assertion that Stride's use of the challenged name had already caused, and was causing, "considerable market confusion"  (Doc.1:¶¶39,62), Stride requested FLVS to "identify each specific known instance of market confusion claimed to have been caused by [Stride]" and witnesses with first-hand knowledge.    Doc.139-23:4-7;Doc.139-19;Doc.139-1:¶¶3,9.  FLVS disclosed only twelve "examples" of purported "actual confusion."  Doc.105:5-7;Doc.105-1,¶4;Doc.139-23:5-6.   But after several extensions, FLVS produced a supplemental answer with a list of additional supposed instances of actual confusion.  Doc.139-23:6,13-16.

At deposition, FLVS's corporate representative, Verghese, confirmed that FLVS's interrogatory answers (which Verghese verified) were "accurate and complete" and that they listed the entire universe of FLVS's purported evidence of actual trademark confusion.  Doc.305-1:12-18,174-76;Doc.305-2:6-15.  Verghese, however, admitted that the overwhelming majority of FLVS's claimed instances of confusion did not involve actual customers but rather were errant transcript requests by school registrars for already-enrolled students or young students already enrolled in Stride programs simply erring in completing assessment forms.  Doc.139-24:9-

12,15-16.  Other instances did not even relate to the FLOS program or other challenged Stride conduct.  Doc.139:21;Doc.175:10-11;Doc.175-8.

At the close of discovery FLVS entreated the district court to expand the number of permissible deponents in order to take out-of-time depositions of purported "confusion" witnesses.  Doc.101.  Despite Stride's opposition, the district court granted FLVS's motion.  Doc.114.  In March 2023, the parties cross-moved for summary judgment on FLVS's trademark infringement and unfair competition claims.  Doc.139;Doc.143.  However, in support of its motion, FLVS offered only *two* instances of "confused" parent-consumers, Casey Kalajian and Lisa Kornheisl, both of whom admitted that whatever confusion they experienced was not attributable to Stride's conduct but could have arisen from various other causes, such as Kornheisl's legal blindness.    Doc.171-1:19;Doc.171-2:30-31;Doc.175:9-10;Doc.176-5:15-17.  Nor did either parent's initial mistakes cause loss to FLVS (or undue profit to Stride), given both parents resolved their "confusion" before either child even *started* an FLOS course.    Doc.171-1:18,24-25;Doc.171-2:17,33;Doc.175:9-10,15.[8]

---

[8] Kornheisl's testimony also was influenced by her having spoken in advance with FLVS's counsel, who told her "what this was all about . . . was literally a difference of one letter." Doc.171-2:29-30.

In September 2023, the district court denied the cross-motions for summary judgment on FLVS's infringement claims. Doc.297. Although the court held that disputed questions of material fact remained so as to permit FLVS to present these claims at trial, the court observed that parents are sophisticated and knowledgeable consumers; that evidence of third-party use of the marks existed; and that FLVS's "conclusory statements regarding [Stride's] intent [were] not adequately supported by the record." Doc.297:11-16. Evaluating FLVS's "best evidence" of actual confusion, the court disagreed that the record contained a "*wide range* of instances of actual confusion," finding it "odd that [FLVS] conducted no statistical survey to measure likelihood of confusion" and noting that without a survey FLVS "face[d] an uphill battle to demonstrate that one instance of potential customer confusion justifies the millions it seeks in disgorgement damages." Doc.297:17-18.

### Stride's Counterclaim

Stride asserted a counterclaim against FLVS for cancellation of its marks for fraud on the USPTO. Doc.155:32-52;Doc.153. Stride alleged that FLVS falsely represented in its USPTO trademark applications – including to overcome the 2010 descriptiveness rejection – that FLVS had priority of use in the pre-K and primary school markets from at least 2002. Doc.155:32-52.

In August 2023, on cross-motions for summary judgment, the district court held that Stride's cancellation claim pertaining to FLVS's 2010 registrations was

precluded by the releases in the Settlement Agreement (despite FLVS admitting its statements about pre-K services were false), and that two of FLVS's other registrations did not contain fraudulent statements. Doc.289:6-15.[9] However, the court found that the "materiality" element of Stride's counterclaim had been met and that the claim remained actionable regarding three of FLVS's 2016 applications. Doc.289:15-18.

### The Trial and Post-Trial Ruling

In October 2023, the district court held a bifurcated bench trial on Stride's trademark cancellation counterclaim and FLVS's infringement claims. Doc.293. The parties beforehand stipulated to various facts and legal principles. Doc.302:15-24.

After Phase I of trial, the district court granted FLVS judgement on Stride's counterclaim, finding insufficient evidence of falsity and subjective intent to defraud the USPTO in FLVS's 2016 applications. Doc.363. Nevertheless, the court later noted FLVS had admitted it had "made at least one material misrepresentation" to the USPTO in its 2010 application (regarding pre-K use) and there was "evidence that [FLVS] made further misrepresentations in its effort to establish secondary

---

[9] In responding to Stride's counterclaim, FLVS took the incredible position that despite the Settlement Agreement requiring it to act in "good faith" to resolve disputes, FLVS was immune to claims "based in any way on bad faith," *i.e.*, that it had no enforceable obligation to act in *good faith*. Doc.250:11;Doc.271:18.

meaning and overcome the initial rejection of its application for these marks." Doc.369:11n.12.

In Phase II, the district court heard FLVS's infringement claims (and Stride's defenses) admitting all of FLVS's proffered evidence. Doc.334;Doc.337;Doc.338;Doc.342;Doc.350;Doc.351;Doc.352;Doc.353;Doc.354; Doc.369:20-21;Doc.371.  FLVS's only remaining relief going into trial was to enjoin Stride's already discontinued use of FLOS and to disgorge Stride's profits for having used that name from 2019-2021.  Doc.369:4.  FLVS called seven witnesses—only two (Kalajian and Kornheisl) to testify about purported confusion.  Doc.334:155-220;Doc.337:11-116;Doc.338:4-118;Doc.342:11-135.  Stride called five witnesses, including Stride's managing director of portfolio companies and formerly Chief Marketing Officer; Stride's executive director of schools and formerly head of Stride's HCSD program; and the HCSD Superintendent.    Doc.342:144-234;Doc.353:10-96;Doc.354:5-106.[10]

---

[10] During trial, FLVS showed the non-trademark phrase "Florida online schools" (plural) remained on a Stride website, despite admitting it "sprung that evidence" on Stride at trial instead of timely notifying Stride and negotiating in good faith about that issue as the Settlement Agreement required.  Doc.353:7;Doc.350-14:12.  FLVS later complained when Stride representatives reviewed the publicly available website and, consistent with Stride's prior remedial measures, directed the removal of that website language.  Doc.353:5-14.  But Stride submitted for *in-camera* inspection its relevant internal emails about the webpage and a copy of the webpage before the change, showing no evidence tampering or any violation of the rule of

(continued on next page)

In January 2024, the district court granted judgment for Stride on FLVS's trademark infringement and unfair competition claims, which was the "only reasonable outcome given the dearth of evidence supporting [FLVS's] claims." Doc.369:36. Reviewing each of the "likelihood of confusion" factors, the court found FLVS had "presented little credible evidence that [Stride's] use of the Florida Online School mark infringed on its trademarks." Doc.369:7-35. FLVS's marks were "among the most generic, descriptive—and therefore *weak*— marks the Court ha[d] seen," and the court found "no credible evidence of actual confusion occasioned by the similarity of these marks." Doc.369:11-23,35.

Nor did the district court find any ill intent on Stride's part in adopting the FLOS name. Doc.369:24-36. To the contrary, the court found FLVS's "prosecution of this lawsuit . . . akin to a 'trademark bully' harassing a competitor" and found it "notable that this case proceeded to trial after years of contentious litigation even though [FLVS] suffered no damage by reason of [Stride's] conduct, and had no beneficial remedy available to it." Doc.369:25,36n.33.[11] The court held that

---

sequestration and the court so found. Doc.356-2;Doc.360:24n.11,28n.15;Doc.369:24n.23.

[11] These rulings were hardly remarkable, given FLVS's argument that, despite its obligation under the Settlement Agreement, it had no enforceable duty to act in good faith to avoid a dispute. *See supra* n.9.

FLVS's weak "trademark does not entitle it to a monopoly on generic and descriptive terms for describing online education."  Doc.369:29n.26.

The district court invited Stride to file an amended motion for sanctions, Doc.369:36, which Stride did. Doc.372;Doc.373.  In response, FLVS filed its notice of appeal before the district court entered final judgment and moved to stay consideration of Stride's sanction motion. The district court granted the stay. Doc.381;Doc.382;Doc.386.

### C.    Standards of Review

Although denials of a jury demand are reviewed *de novo*, *Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1352 (11th Cir. 2019), a "district court's findings of no profits and no damages are questions of fact and therefore subject to the clearly erroneous standard of review," *St. Charles Mfg. Co. v. Mercer*, 737 F.2d 891, 893 (11th Cir. 1983).  Clear error only occurs if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1255 (11th Cir. 2016) (quotations omitted) ("*FIU*"). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."  *Id.*

The Court reviews "a district judge's exclusion of expert testimony only for abuse of discretion."  *Chapman v. Procter & Gamble Distributing, LLC*, 766 F.3d

-31-

1296, 1305 (11th Cir. 2014). "The 'considerable leeway' accorded to a district judge . . . requires [the Court] to defer to the judge's decision on expert testimony, unless it is manifestly erroneous." *Id*. "This deferential abuse-of-discretion standard is applied stringently, even if a decision on expert testimony is 'outcome determinative.'" *Id*.

The Court reviews *de novo* grants of summary judgment. *Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1344 (11th Cir. 2012). To avoid summary judgment, there must be a *genuine* issue of *material* fact; "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

After a bench trial, the district court's conclusions of law are reviewed *de novo* and factual findings are reviewed for clear error. *Hard Candy*, 921 at 1360. But "[f]indings as to whether a plaintiff has ultimately shown a likelihood of confusion, as to each of the factors, . . . are subject only to clear error review." *Id.*; *see also FIU*, 830 F.3d at 1255.

## <u>SUMMARY OF ARGUMENT</u>

**I.**    The district court correctly determined FLVS presented no evidence to support its claim of actual loss caused by Stride's conduct. The court also correctly determined Gallogly's damages opinions were unhelpful and unreliable. Without

any evidence to support an actual damages claim, the district court correctly determined FLVS was limited to equitable remedies and was not entitled to a jury trial.

**II.**     The Court should uphold the district court's discretionary exclusion of Stec's false advertising opinions as unhelpful and based on a misleading premise. The Court also should affirm the district court's determination that without proof the Checklist was literally false or misleading, Stride was entitled to summary judgment on FLVS's false advertising claim.

**III.**     The district court properly applied the factors relevant to this Circuit's confusion analysis and appropriately weighed the evidence in determining that FLVS's marks were weak and diluted, that there was no credible evidence of consumer confusion, that the evidence did not support the claim that Stride intended to trade on FLVS's claimed goodwill, and that a weighing of all the confusion factors favored a finding of no confusion.

**IV.**     The district court properly disposed of FLVS's claim over the flva.com redirect.  FLVS presented no evidence to support an infringement claim, and its corporate representative clearly admitted that the domain redirect was part of FLVS's breach claim, not any infringement claim.  The district court had more than sufficient information and the benefit of full briefing to decide, and it properly granted summary judgment.

**V.**    The district court properly exercised its discretion to limit any disgorgement award to the two years during which the challenged FLOS name was used and to exclude profits from Stride's operations elsewhere in Florida and nationally in the absence of evidence of consumer trademark confusion or advertising deception outside the State.

**VI.**    There is no basis for reassignment should the Court remand the case. That severe remedy is reserved for evidence showing partiality by the district judge. But FLVS presents none.

## <u>ARGUMENT</u>

## I.    The District Court Did Not Clearly Err In Finding FLVS Did Not Present Evidence Of Actual Damages And Was Not Entitled To A Jury.

### A.    The District Court Did Not Clearly Err In Finding No Evidence FLVS Suffered Harm Caused By Stride.

Lanham Act claims for actual damages require "evidence that the plaintiff suffered actual damages, that is, that the loss was caused by defendants' actions." *Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1252 (11th Cir. 2007) (quotations omitted); Br.27 (agreeing).  The "plaintiff must demonstrate the basis for his recovery *with specificity*, thereby showing that injury or profitable infringement actually occurred" with "evidence of actual damage or actual profits *in dollars and cents*." *St. Charles*, 737 F.2d at 893 (emphasis added).

As in *Optimum*, where this Court affirmed that the plaintiff "introduced *no* evidence of the actual monetary damages that it suffered from [defendant's] alleged trademark infringements and unfair competition," 496 F.3d at 1252, here too, the district court did not clearly err in determining – after thorough review of "the thousands of pages filed on this docket" – that FLVS "produced no evidence whatsoever that it ha[d] been damaged by [Stride's] alleged infringement." Doc.306:3,6;Doc.287:6(finding "*zero* evidence of actual damages"); Doc.369:36n.33(finding FLVS "suffered no damage by reason of [Stride's] conduct").

FLVS claims it "offered ample evidence" of actual damages. Br.28. Not so. Despite alleging in its complaint it already had evidence of "considerable market confusion" that "caused injury to FLVS, including . . . lost revenue from customers who have been diverted to [Stride]," Doc.1:8,11, FLVS relied primarily on *one* "confused" parent, Kalajian. But reviewing her testimony at summary judgment (Doc.171-1), the district court correctly determined that she did not represent actual lost sales (let alone *specific* loss) to FLVS caused by the FLOS name. Doc.306:3n.3. Kalajian testified she unenrolled her daughter from FLOS before attending *a single class* and sent her "back to brick-and-mortar" school that reopened, and that her failure to do "enough due diligence" and thinking "there was only one [online

school] option" in Florida could have been her sources of confusion—not the FLOS name.  Doc.171-1:16-19,24-28,44.

FLVS's *ipse dixit* assertion that it "would have earned an additional $4,694 in FEFP [Florida Education Finance Program] revenue" and "3,661.32 in profit" from Kalajian is not grounded in evidence—just Gallogly's conclusory report.  Br.28 (relying on Doc.273-1);Doc.139-23;Doc.305-1:73-78,82-85;Doc.305-2:19-23.  But funding to FLVS is based on a student's completion of a program, not mere enrollment.  Doc.268-2:78-80.  And FLVS presented no evidence that Kalajian constituted a diverted student completion from FLVS to Stride, let alone one caused by the FLOS name, versus other superseding causes, such as her brick-and-mortar school reopening.  Nor did Gallogly know if a single student completion was diverted from FLVS to FLOS because of Stride.  Doc.268-2:78-80; *see Hard Candy*, 921 F.3d at 1353 ("The primary limiting principle is that damages may not be 'speculative.'").

None of the other contested "evidence" FLVS cites constitutes causative "real damage" either.  Br.29.  Kornehisl enrolled her child in *FLVS*, admitting there were a host of causes (such as her blindness) for her supposed confusion.  Doc.171-2:15-17,31,33.  FLVS also cites various emails (Br.29), which it tellingly chose *not* to advance at summary judgment or when it moved for reconsideration of the district court's damages rulings.    Doc.143:25-26;Doc.171:3-4;Doc.185:8n.7;Doc.299.

-36-

These too were immaterial: errant transcript requests by registrars (not parents) for students *already enrolled in FLVS* or correspondence with students already enrolled in Stride's program merely seeking to complete assessments (even more irrelevant given parents, not students, enroll in the Stride's program). Doc.139-24:9-12,15-16. None of them evidenced any specific causative monetary loss to FLVS. *See St. Charles*, 737 F.2d at 893; Doc.287:6;Doc.306:3-4;Doc.369:20-21.

FLVS also introduced no evidence that its reputation/goodwill actually was damaged by Stride. Br.29-30; *see St. Charles*, 737 F.2d at 893 (affirming denial of lost profits claim where "plaintiffs introduced no evidence showing any damage to their reputations"). FLVS never specified any actual loss tied to reputational harm in any of its disclosures, discovery responses, or testimony about damages. Doc.139-19;Doc.142-1;Doc.139-23.[12] Gallogly did not attempt to measure harm to reputation/goodwill in his damage report. Doc.268-1. Nor did FLVS even raise the issue in its "last-ditch attempt to salvage its damages claims" before trial. Doc.306:4;Doc.299.

At most FLVS "provided a framework for how one 'could' calculate such lost profits," but, as the district court correctly observed, FLVS could not "point to any actual instances that *should* be so computed." Doc.306:3n.2. Indeed, while FLVS

---

[12] FLVS also identified zero evidence of any confusion or lost student completions caused by the flva.com domain redirect. Doc.305:5;Doc.139-32.

now contends it should have an "inference" of actual damage, FLVS admitted that it first had to "establish[] the fact of damages," before "the amount of damages" could go to a jury.  Br.29-30;Doc.299:11.  But it could not do so, and the district court did not err in so holding.  Doc.306:3-4;Doc.287:6; *see Optimum*, 496 F.3d at 1252-53.

### B.    The District Court Did Not Abuse Its Discretion By Excluding Gallogly's Speculative Lost Profits Opinions.

The district court properly exercised its "important 'gatekeeping' function" to exclude Gallogly's lost profits opinions as speculative, unreliable, and unhelpful.  Doc.287:3(quoting *Daubert v. Merrell Dow. Pharms., Inc.*, 509 U.S. 579, 579 (1993)).  Expert testimony must be based on "more than subjective belief or unsupported speculation."  *Daubert*, 509 U.S. at 590.  "[N]either *Daubert* nor Federal Rule of Evidence 702 require[d] [the] trial judge 'to admit opinion evidence that [was] connected to existing data only by the *ipse dixit* of the expert.' "  *Chapman*, 766 F.3d at 1305.  "[A]ny step that renders the analysis unreliable under the [*Daubert*] factors renders the expert's testimony inadmissible."  *Buland v. NCL (Bahamas) Ltd*, 992 F.3d 1143, 1151 (11th Cir. 2021).

Applying these standards, the district court correctly found that Gallogly's underlying assumption – that but for Stride's challenged conduct, 100% of the students who completed the FLOS program could have, and would have, enrolled in and completed FLVS – was "entirely speculative because there [was] absolutely *no*

evidence for it." Doc.287:4-6;Doc.268:12-21;Doc.268-1;¶¶22-27. Gallogly himself admitted he had "zero actual evidence" of any damage to FLVS. Doc.268-2:166,280-82.

FLVS primarily argues that the district court wrongfully criticized Gallogly for assuming liability or causation. Br.43-44. But FLVS testified it *was* relying on Gallogly's opinions as evidence that the "conduct of [Stride] that's challenged in [the] lawsuit caused the injury . . . that FLVS is complaining about." Doc.139-24:3-6;Doc.305-1:182-85. Regardless, the district court observed that "[w]hile a damages expert may generally assume that a plaintiff will prevail on each of its *separate* claims when calculating actual damages, the expert cannot also assume that [FLVS] would have obtained *all* of [Stride's] student registrations had [Stride] not engaged in allegedly unlawful conduct." Doc.287:4. Gallogly's opinions were unreliable and unhelpful because he failed to calculate causative damages, based on record evidence, and to apportion them on a claim-by-claim basis. Doc.287:5&n.6;Doc.286:46; *see* Doc.268-2:86-87,99-100,249-50,288-92; *see also Optimum*, 496 F.3d at 1251-52 (affirming judgment against plaintiff whose damages expert "failed to 'separate out' the claimed damages that were actually attributable to [defendant's] conduct").

Far from being "supported by hard data," Br.45, Gallogly's lost profits opinions rested on three unsubstantiated assumptions: that (1) every full-time

equivalent student who completed Stride's HCSD program for the two years it was named FLOS could have (and would have) enrolled in FLVS's program but for infringement; (2) the students would have completed FLVS and been recorded by the FLDOE as completions (for revenue purposes) just as they were in the FLOS program; and (3) FLVS would continue to lose profits as a result of Stride's actions from the 2019-2020 school year through *2032-2033*.    Doc.268-1:¶¶25,29-44;Doc.268-2:124-44,172-75,191-97;Doc.268-3:41-56.  As the district court found, none of this relied "on any economic, technical, or other specialized knowledge"; it was "entirely speculative," "simple math" that would be unhelpful to a trier of fact. Doc.287:5-6;Doc.286:46-48.[13]

Gallogly admitted he had no factual foundation for opining that lost profits from FLOS (if any) would continue until 2033—*twelve years* after Stride changed the name to DAOF—or that any causative confusion would persist that long. Doc.287:6n.7;Doc.268:10,19-21;Doc.268-2:126-34,284; *see Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, No.1:04-cv-1082-TWT, 2006 WL 1663357, at *4 (N.D. Ga. June 14, 2006) (disregarding expert who "assumed in calculating . . .

---

[13] That FLVS even lost profits was further belied by it experiencing "record high" enrollments" during Stride's challenged conduct— a "+120%" year over year increase from the pre-COVID academic year.  Doc.150-8:6;Doc.150-9:3;Doc.150-10:87-88,124-25;150-11:29.

damages that the alleged trademark infringement, including other alleged improper uses beyond the websites, was ongoing," when it "ceased"), *aff'd,* 496 F.3d at 1231.

Nor did Gallogly even attempt to consider alternative, lawful causes for parents or students choosing Stride's program over FLVS's, such as different courses, eligibility requirements, or enrollment periods—all of which could impact retention and state funding.   Doc.268:16-19;Doc.268-2:175-81,288-92;Doc.268-3:48-51,60-63;Doc.268-4:15.   He simply assumed *all* students who completed FLOS – not merely "some" (Br.44) – were confused by the name and could and would have enrolled in FLVS otherwise.   Doc.268-1:¶¶31-35;Doc.268-2:135-44,172-75,191-96. Such conclusory assertions, disguised as "expert" opinions, are inherently unreliable and unhelpful. *See Chapman*, 766 F.3d at 1305-06. The district court did not abuse its discretion in excluding them.

## C.   The District Court Properly Struck FLVS's Jury Demand.

Having properly disposed of FLVS's actual damages claim, the district court correctly held FLVS was not entitled to a jury trial on its remaining, equitable remedies of disgorgement of profits and injunctive relief.  Doc.287:6-7;Doc.306:4,6. "[D]isgorgement of a defendant's profits in a trademark infringement case is equitable in nature and does not carry with it a right to a jury trial." *Hard Candy*, 921 F.3d at 1359, 1364.  The same is true of injunctive relief—"the quintessential form of equitable remedy." *Id*. at 1353.  Because the district court properly granted

Stride summary judgment on FLVS's actual damages claims, it did not err by striking FLVS's jury demand and holding a bench trial on the remaining claims. *See Vital Pharms., Inc. v. Monster Energy Co.*, No.21-13264, 2022 WL 3083273, at *4 (11th Cir. Aug. 3, 2022) (district court did not err in conducting bench trial after excluding actual damages claim because plaintiff's "remaining remedies, including disgorgement of profits, were equitable, not legal, in nature, so it was not entitled to a jury trial on those matters").

## II. The District Court Properly Denied FLVS's False Advertising Claim.

### A. The District Court Did Not Abuse Its Discretion In Excluding Stec's Report.

The district court properly excluded Stec's report because it was "not a reliable scientific survey that would assist the jury." Doc.261:10. Although Stec's "survey mechanics" were "generally acceptable," his "survey ultimately portray[ed] [Stride's] website and the Checklist out of context," meaning it was "founded upon insufficient data and facts." Doc.261:10(citing Fed. R. Evid. 702(a)-(b)). There was no abuse of discretion. Stec's survey was "ultimately based upon a misleading premise"—it *assumed* the Checklist contained false and misleading statements, rather than objectively testing that proposition. Doc.261:7-9;Doc.248:56,61-62(questioning "the foundation upon which his survey [was] based"). That "unsupported assumption made his [survey] unreliable." *Buland*, 992 F.3d at 1151.

Stec's survey asked respondents to answer questions after viewing just two extracted webpages: the page referencing a comparison to other programs, and the Checklist. Doc.170-2:12-13. But "in reality," users would have to navigate through several other pages before opening the Checklist, which is not portrayed as a standalone page. Doc.170-1:20-26:Doc.248:24-25;Doc.261:8. Notably, Stec omitted the text making clear the Checklist was a tool to "use" when "weigh[ing] your options"; the "View Checklist" button showing the Checklist was a pop-out PDF; and any "other context or opportunity to evaluate the programs that *other* online learning solutions offered." Doc.261:7-9;Doc.170-2:10-18; Doc.170-1:27-31. Because it did not replicate market conditions, Stec's survey was "flawed." Doc.261:8-9; *see* 1 *McCarthy on Trademarks and Unfair Competition* § 32:163 (5th ed.). The district court was well within its discretion in reaching that finding. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 142 (1999) (district court has "same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination").

FLVS relies on *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242 (11th Cir. 2002), but that case actually supports the district court's decision. There, this Court held that when evaluating an advertisement, "the court must view the face of the statement in its entirety, rather than examining the eyes, nose, and mouth separately and in isolation from each other." *Id.* at 1248. Here, the

district court evaluated the Checklist as it appears in the marketplace as part of a larger website.  Doc.261:7-9;Doc.369:2-3.  By failing to present the full picture consumers would encounter, Stec's survey was neither reliable nor helpful. Doc.261:9-10; *see Johnson*, 299 F.3d at 1248 (the Court "may not *assume* context"). The district court did not abuse its "wide latitude in conducting a *Daubert* analysis." *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1343-44 (11th Cir. 2010).

### B.    The District Court Did Not Err In Finding Nothing Literally False About The Checklist.

To prevail on its Lanham Act false advertising claim, FLVS had to establish Stride's "advertisement" (1) was false or misleading; (2) deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on purchasing decisions; (4) the misrepresented product or service affects interstate commerce; and (5) FLVS had been, or is likely to be, injured as a result of the false advertising.  *See Compulife Software Inc. v. Newman,* 959 F.3d 1288, 1316 (11th Cir. 2020).  Failing to satisfy even one of these elements is fatal.  *Id.*

The district court correctly found FLVS's claim failed because it could not establish the Checklist was literally false or, if literally true, somehow misleading. Doc.261:11.  FLVS's corporate representative testified that nothing in the Checklist was "literally false."  Doc.139-32:14-18;Doc.261:11;Doc.248:49-50,61-62.  The Checklist clearly invited readers to do their own research into the offerings of various online educational providers.  It did *not* reasonably or rationally "state" that Stride's

-44-

program possessed all of the attributes, whereas others possessed none.  Doc.248:49-56,61-62.

Nor was the Checklist "false by necessary implication."  Br.54.  That requires that the *only* reasonable interpretation of the content was one that rendered it literally false, for if the meaning is ambiguous or otherwise "susceptible to more than one reasonable interpretation, the advertisement cannot be literally false."  *Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1308-09 (11th Cir. 2010).  But both Stec and FLVS's counsel admitted there were multiple ways to interpret the Checklist that are *not* literally false.  Doc.248:20-24,49.  Indeed, Stec admitted that as to one of the named competitors in the challenged content (Time4Learning), the "statements" were *literally true*.  Doc.248:9-17,30-37.

Where, as here, an advertisement is not literally false, the plaintiff "must provide expert testimony or other evidence" of consumer deception.  *Johnson*, 299 F.3d at 1247.  But besides Stec's flawed survey (which just assumed deception), FLVS had no evidence that even a single consumer was deceived.  Doc.261:13.[14]  Summary judgment therefore was proper for Stride.

---

[14] Nor did FLVS present any evidence of any injury caused by the Checklist because Gallogly just assumed it.  Doc.139-23:6-8;Doc.139-24:3-6;Doc.268-2:284.

### III.   The District Court Did Not Clearly Err In Finding No Likelihood Of Confusion.

The district court properly weighed the evidence at trial and found FLVS failed to demonstrate a likelihood of confusion with the FLOS name. Doc.369:35-36. FLVS challenges every aspect of the court's findings. Br.26-57. But nothing FLVS says leaves a "definite and firm conviction" the district court erred. *See Hard Candy*, 921 F.3d at 1363.

Generally, strength of the mark and evidence of actual confusion are the "most important" of the seven likelihood of confusion factors. *FIU*, 830 F.3d at 1255. While courts make findings as to each factor, the test "entails more than the mechanistic summation of the number of factors on each side; it involves an evaluation of the 'overall balance.'" *Custom Mfg. v. Midway*, 508 F.3d 641, 649 (11th Cir. 2007); *see also FIU*, 830 F.3d at 1255 ("[A] district court's error in its analysis of one of the subsidiary factors . . . is not enough to allow us to overturn the district court's decision.").[15]

This Court is "also mindful that sophisticated consumers of complex goods or services are less likely to be confused than casual purchasers of small items." *Id*. at 1256 (cleaned up). Indeed, selecting a school involves a "degree of care and

---

[15] "[A]nalysis of the Florida statutory and common law claims of trademark infringement and unfair competition is the same as under the federal trademark infringement claim." *Custom*, 508 F.3d at 652-53.

thought" that is "undoubtedly higher than that required for most purchases," meaning the relevant consumers "generally spend a substantial amount of time and energy learning about their options before choosing a school and are, therefore, unlikely to be confused by similar names." *Id*. at 1256 & 1261 (holding "Florida National University"/"FNU" did not infringe on "Florida International University"/"FIU").

Applying this framework, the district court correctly reached its "ultimate fact decision" that FLVS failed to meet its burden. *See Custom*, 508 F.3d at 650.

## A. FLVS's Marks Are Weak And Descriptive.

FLVS argues the district court erred in finding FLVS's marks had little conceptual or commercial strength. Br.32-35. FLVS is wrong. There are four categories of marks: (1) "generic"; (2) "descriptive"; (3) "suggestive"; and (4) "arbitrary" or "fanciful." *FIU*, 830 F.3d at 1256. "Generic marks are the weakest and are not entitled to protection." *Id*. The factfinder then considers "the degree to which third parties make use of the mark"—the more third parties use the mark, the weaker it is, and the less protection it deserves. *Id*. While a mark's incontestability with the USPTO *presumptively* can exhibit strength, that presumption can be rebutted by a showing of commercial weakness or "extensive third-party use." *Id*. at 1257 (affirming defendant rebutted presumptive strength of "Florida International University"). The same goes here.

FLVS leans on the incontestability of two of its marks. Br.32-33. Stride overwhelmingly rebutted that presumptive strength. FLVS's word marks plainly and generically describe where FLVS operates (Florida), the method of delivery (virtual), and the services provided (school). Doc.342:82;Doc.352-54:2;Doc.369:9-11. Little wonder the USPTO required FLVS to disclaim exclusive rights to "VIRTUAL SCHOOL." Doc.351-61;Doc.351-64;Doc.351-15:98-115. The acronym is no better, given FLVS's brand "mandatories" required "full spelling" of the FLVS name. Doc.352-52:19;Doc.337:14-15,63.

FLVS also relies on "survey evidence," Br.33, but its own documents admitted its marks were commercially weak and diluted by a "crowded field of similar names," *FIU*, 830 F.3d at 1258, which indicates "customers will not likely be confused between any two of the crowd," *McCarthy* § 11:85. FLVS's head of marketing testified that in a 2020 survey, only 1% of respondents in Florida even could name Florida Virtual School as a provider "without prompting." Doc.352-55:2;Doc.337:71;Doc.369:13. The FLVS acronym had less than 15% *aided* awareness among prospective and *current* families, and the FLVS full name had only around 36% aided awareness. Doc.352-52:12;Doc.338:23-24,83-88; *see* Doc.352-44:3-4;Doc.352-51:4;Doc.342:108-111.

Notably, FLVS itself found its marks were "*plain, bored, indifferent, apathetic, [and] uninspired*." Doc.352-52:17;Doc.337:66-67;Doc.338:91-

92;Doc.369:14.  FLVS marks also had serious "legibility challenges," including for those (like Kornheisl) with *visual impairments*."  Doc.338:80-81,88-93;Doc.352-52:10.  And FLVS's director of marketing, who testified that changing a logo and using it without "consistency" can *dilute* a brand," admitted that, in only 25 years of existence, FLVS had changed its logo *six times*.  Doc.352-52:11;Doc.338:81-82.  Indeed a month before Stride launched FLOS, FLVS spent nearly $5 million to fully rebrand its national and global services from "Florida Virtual School" and "FLVS Global" to "FlexPoint," considering it "mandator[y]" to "avoid the word 'Florida' or any acronyms."  Doc.352-54:2-4;Doc.337:79-81.  The district court properly weighed all of this evidence.  Doc.369:12-14.

FLVS further argues the district court erred in considering an "unspecified number of" third-party online education providers ("virtual instruction programs" or "virtual schools," as the FLDOE calls them) employing similar naming conventions.  Br.34-35; *e.g.*, Doc.352-80(Broward Virtual School);Doc.352-81(Orange County Virtual School);Doc.352-84 (Virtual Prep Academy of Florida).  But "there is no hard-and-fast rule establishing a single number that suffices to weaken a mark" because "a weak trademark is one that is often used by other parties."  *FIU*, 830 F.3d at 1257.  And though FLVS baldly asserts these other names are "not confusingly similar" to FLVS (Br.34), it already admitted that these "competitors['] frequent use of such "*generic words/phrases* to describe their Florida-based schools" was

"*further confusing the marketplace*."    Doc.352-52:9;Doc.337:93-97;Doc.338:77-78;Doc.342:152-53.    FLVS's own records proved its marks were "patently descriptive and weak."  Doc.369:15-17.

### B.    FLVS Presented No Credible Evidence Of Actual Confusion.

FLVS agrees "[e]vidence of confusion by actual or potential customers is . . . the best evidence of a likelihood of confusion."  *FIU*, 830 F.3d at 1264.  But "[i]n assessing the weight of evidence of actual confusion" it is important "<u>who</u> was confused and <u>how</u> they were confused"—*i.e.*, whether "actual customers" were confused by use of the mark "as opposed to other categories of people."  *Id*.  Thus, "[s]hort lived confusion or confusion of individuals casually acquainted with a business is worthy of little weight."  *Id*.; *see Hard Candy*, 921 F.3d at 1362.  The district court did not clearly err in finding FLVS "presented no credible evidence of actual confusion occasioned by the similarity of these marks."  Doc.369:17,35; *see* Fed. R. Civ. P. 52(a)(6).

1.    FLVS incorrectly argues the district court weighed against FLVS its decision not to present any consumer survey on confusion.  Br.38.  The point was that without a survey, FLVS had "no way to filter out latent marketplace confusion that the parties agree exist[ed] in the online education market" unrelated to and/or predating the FLOS name.   Doc.369:20n.19,22-23;Doc.338:77-80;Doc.342:151-52;Doc.352-52:9.  That meant FLVS could neither filter out any purported residual

confusion released in the Settlement Agreement, nor any confusion caused by FLVS's *own* use of generic terms such as "K12" and "online school" in its marketing.  Doc.334:12-15;Doc.337:91-92;Doc.342:89-94.

**2.**    FLVS nevertheless insists it had "substantial" evidence of actual confusion.  Br.35.  But at trial, all FLVS mustered was "brief testimony of two people" – Kalajian and Kornheisl – neither of whom credibly established actionable confusion.    Doc.342:98;Doc.369:18-20.    Kalajian testified she did little due diligence and "wouldn't consider what [she] did research" to determine what virtual school to send her daughter to in 2020, inasmuch as "she didn't believe it was necessary" because she thought "only one" online education provider existed in Florida.    Doc.338:106-107,111,114.    Plus, after receiving "K12"-branded educational materials, she successfully unenrolled her daughter from FLOS, tried to enroll in FLVS, but because of FLVS's delay in assigning her a teacher, returned her daughter to a brick-and-mortar school.  Doc.338:107-16.

Korneisl did not firmly establish any confusion caused by FLOS either.  She initially wanted a full-time program, but then wanted a "flexible" schedule for her son, and after enrolling him in FLOS, "immediately realized" the issue and put him in *FLVS*'s program (before even attending an FLOS class), where he completed his desired flexible programs.  Doc.342:14-19,22,24.  Critically – in light of FLVS's admission it had legibility issues with its acronym (Doc.338:80-81;Doc.352-52:10)

– Kornheisl admitted her "confusion" came from "one letter *and [her] poor vision*." Doc.342:13-17,19.  At most, FLVS suggests there were other "plausible ways" to interpret Kalajian and Kornheisl's testimony. Br.36-37.  But "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985); *see also Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1361 (11th Cir. 2007) (affirming no infringement where confusion evidence had "no explicit connection" to the marks and "could just as likely have arisen" from other causes).

**3.**    FLVS also argues the district court "ignore[d]" various emails and social media posts FLVS waited until trial to proffer into evidence, which it claims "clearly demonstrat[ed] actual confusion."  Br.11-13,37.  The district court did not ignore anything—it admitted these non-specific and vague messages, but found they did "not constitute reliable evidence of confusion."    Doc.369:20-22;Doc.371. Hardly "direct evidence" of confusion (Br.38), none of these messages (many from *FLVS* students) were "trustworthy" without understanding the actual source and nature of the confusion, the authors' motivations, or any resulting harm. Doc.369:21;  *see*  Doc.305-2:13-23,39,68-70,77 (FLVS agreeing that to fully determine confusion from a document, it is "very important" to actually speak to the individuals because you cannot "read people's minds").  Nor were errant transcript requests by out-of-state registrars material evidence, given registrars are not actual

"customers". Doc.342:180; *see FIU*, 830 F.3d at 1264; *Custom*, 508 F.3d at 651 & n.9. This Court affords the district court "great latitude in determining the appropriate weight to accord particular evidence," *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1544n.68 (11th Circ. 1986), meaning it "was well within its right to disregard" these vague materials, *FIU*, 830 F.3d at 1264-65.[16]

### C.    FLVS Lacked Any Evidence Of Ill-Intent.

The district court also did not clearly err in finding a "complete dearth of evidence of any ill intent" by Stride. Doc.369:25. FLVS had to show Stride possessed a "conscious intent to capitalize on [FLVS's] business reputation, was intentionally blind, or otherwise manifested improper intent in adopting [the Florida Online School] name and acronym." *FIU*, 830 F.3d at 1263. FLVS thoroughly cross-examined Stride's witnesses, repeatedly attempting (though failing) to evidence any inconsistences or ill-intent in adopting the FLOS name. The district court's job then was to assess credibility of the trial evidence, which it did, finding Stride had "no intent to play off the good will of [FLVS's] marks." Doc.369:36; *see* Fed. R. Civ. P. 52(a)(6).

To the contrary, the trial evidence confirmed Stride selected a generic name that FLVS chose *not* to prohibit in the Settlement Agreement (Doc.350-14:8)—

---

[16] FLVS also provided zero evidence of any confused or diverted consumers to support its unpled SEO/SEM theory. *See* Doc.369:29n.26;Doc.342:151,207,216-22.

FLVS obviously could have included "Florida Online School" on the prohibited list, but it did not.   Dkt.342:81-82,150-51,156-57;Doc.353:15;Doc.369:25.   Instead, Stride selected a proposed name using a simple naming convention, and it was approved at arms-length by the HCSD.   Doc.342:160;Doc.353:19;Doc.350-16; *see Welding*, 509 F.3d at 1361 (no willful infringement where mark "was created . . . to harmonize . . . and shows an innocent origin for the logo").   Moreover, as soon as FLVS complained, Stride voluntarily changed the FLOS name "[a]s quickly as [it] could"—doing so well before FLVS filed suit.   Doc.369:25-26;Doc.342:149,163-69;Doc.353:51,83;Doc.354:13-14;Doc.350-17.   While FLVS "may have wanted this process to progress at a more rapid pace, this is not evidence that [Stride's] alleged infringement was willful."   *Optimum Techs., Inc. v. Home Depot U.S.A., Inc.*, 217 F. App'x 899, 903 (11th Cir. 2007); *see also Suntree*, 693 F.3d at 1348.

Nothing FLVS now argues establishes clear error.   FLVS falsely claims Stride had a "two-decade long pattern of infringement" (referencing the parties' prior litigation).   Br.2,38.   But the Settlement Agreement was entered into, and the prior litigation dismissed *with prejudice*, before any judgment or merits finding on infringement.   Doc.350-14.   FLVS agreed there was "no admission of fault or liability by Stride and "irrevocably" released Stride from any actions or liabilities arising out of the former FLVA/FLVP names/acronyms.   Doc.350-14:8-10.

FLVS's cries of a "cover up" and a violation of the rule against sequestration also are hollow. Br.39. The district court correctly ruled there were none after in-camera inspection, given the prior webpage was preserved and there was no improper discussion of witness testimony, which was not contradicted. Doc.369:24n.23; *see supra* n.10. Nor did the district court "discount[ ]" anything about the phrase "Florida online schools" (*plural*) remaining on one of Stride's webpages. Br.22,39. That was manifestly non-trademark, descriptive, fair use permitted by the Settlement Agreement; constituted no injury to FLVS (which waited until trial to complain about it); and therefore was irrelevant. Doc.350-14:7;Doc.353:7;Doc.369:24n.23. FLVS's "trademark does not entitle it to a monopoly on generic and descriptive terms for describing online education." Doc.369:29n.26.

### D.    The Other Similarity Factors Did Not Move The Needle.

FLVS fails to establish the district court clearly erred with its analysis on any of the remaining four "similarity factors," which the court found were either neutral or, in one case, "slightly" favored FLVS. Doc.369:27-34.

**1.**    FLVS argues the district court erred in finding similarity of the FLVS and FLOS marks was neutral. Br.40. The court *did*, however, recognize that the "textual similarity of the marks [was] readily apparent." Doc.369:27. What neutralized it was that FLVS "operates in a crowded field of similar marks on similar

goods or services," Doc.369:27-28, where "slight differences in names may be meaningful," such as even one letter. *FIU*, 830 F.3d at 1260. Plus, courts do not only compare the words: they consider "the overall impressions that the marks create, including the sound, appearance, and manner in which they are used." *Custom*, 508 F.3d at 648. Here, the FLVS and FLOS marks and overall impressions "look[ed] nothing alike." Doc.369:28:

 

2.      FLVS claims the district court had no basis for assessing the relevant consumers (school districts, administrators, and parents) as "sophisticated." Br.40. But the evidence showed that school districts, guidance counselors, and administrators have an "[e]xtreme understanding" of the market. Doc.337:88,90-91;Doc.342:173-74;Doc.354:16-18;Doc.297:11,21(citing and finding "evidence that the parties' customer base, like that in *FIU Board*, is sophisticated"). As the district court rationally observed, just because two individuals may not have been sophisticated "does not suggest that the thousands of other customers of these parties are not sophisticated." Doc.369:29(citing Doc.352-69,Doc.150-8).

**3.**    The district court also did not err in finding neutral the parties' customers and trade channels. Br.41. While FLVS considered parents and students its customers, for Stride's HCSD program, the customer was (and is) the HCSD, as the only one purchasing products and services from Stride. Doc.369:32;Doc.337:23;Doc.342:145-46,149-50,177-78,193-94,197.    FLVS presented no evidence otherwise. The parties advertise differently too—Stride did not even actively market the FLOS school and instead advertised under its "K12" or "Stride" branding.    Doc.369:32-34;Doc.342:157-58,177-78,180,183-86,193-97,202-203.    That was clear with how one even reached the FLOS website. Doc.369:34;Doc.342:202-207. The district court properly weighed this evidence.

*    *    *

FLVS gives no reason that the district court *clearly* erred with its "ultimate conclusion" that FLVS did not demonstrate a likelihood of confusion. *See FIU*, 830 F.3d at 1265.

## IV.    The District Court Correctly Disposed Of FLVS's Claim Regarding The flva.com Redirect.

The district court rightly rejected FLVS's claim regarding the flva.com redirect—whether styled as a breach of contract or "trademark infringement." Doc.297:7-9;Doc.306:4-7. The Court should affirm because "no fair-minded jury could return a verdict for [FLVS] on the evidence presented." *Caron v. NCL (Bahamas), Ltd.*, 910 F.3d 1359, 1368-69 (11th Cir. 2018).

**1.**    FLVS argues it "unambiguously" pleaded an infringement claim regarding flva.com.    Br.47.    But even if it did (which was hardly so), FLVS repeatedly admitted the fact that the flva.com redirect issue only was "a concern as a breach of the *settlement contract*"— not infringement.    Doc.305-1:47-49,176-77 (emphasis added). Even when FLVS moved for summary judgment on its own infringement claims, it only described the issue as "contravention of the Settlement Agreement."    Doc.141:21-22; *see* Doc.141:12-13;Doc.295:4-5(FLVS improperly "conflated" its allegations);Doc.306:4-5(nowhere in "over three hundred docket entries" had FLVS based its trademark infringement arguments on use of the flva.com domain).

After all, FLVS already asserted in the prior litigation that the FLVA domains were infringing, and the Settlement Agreement prohibited FLVS from pursuing that claim (including for any residual confusion) again.    Doc.306:5:n.5;Doc.250-1:¶¶5,6(a),7.  Likewise, it was undisputed that the only "use" of the flva.com domain was as a redirect to the FCCA website.  Doc.1:10;Doc.171:17; *see* Br.56.  But FCCA was an "approved" name under the Settlement Agreement (Doc.350-14:16), and one that FLVS admitted it "did not object to" or challenge "in this lawsuit." Doc.1:8;Doc.168:8n.3;Doc.248:79-80; Doc.306:5n.5.[17]

---

[17] FLVS argues Stride could not invoke the Settlement Agreement's release because it never pled that as an affirmative defense.    Br.49. Weird—and wrong. Stride's

(*continued on next page*)

**2.**    FLVS produced no evidence whatsoever of web traffic diversion, consumer confusion (survey or otherwise), bad-faith, harm, or undue profit caused by the alleged flva.com redirect. Doc.171:11-12,16-17;Doc.299:5-6,12-14;Doc.305-1:73-78,82;Doc.353:42-43.  For example, when asked to explain the basis for its allegation that consumers were likely to believe Stride's services originated with FLVS because of the flva.com domain, FLVS merely directed Stride to its response to interrogatory #10 (concerning damages).  Doc.144-2:18-19.  FLVS's response to that earlier interrogatory in turn said it was relying on Gallogly's reports.  Doc.144-2:37-39.  But Gallogly admitted he had no evidence of any confusion or harm caused by flva.com. Doc.268-1:¶¶5,18,22;Doc.268-2:87-88,166,282.  Neither did FLVS.

**3.**    FLVS's last argument that the district court "*sua sponte*" granted summary judgment on the flva.com issue also is meritless.  A district court may indeed "enter summary judgment *sua sponte* if the parties are given adequate notice that they must present all of their evidence."  *Flood v. Young Woman's Christian Ass'n of Brunswick, Georgia, Inc.*, 398 F.3d 1261, 1267 (11th Cir. 2005).  They were here.  Stride clearly moved for summary judgment on *all* FLVS's trademark infringement claims (plural) and breach of contract claim and expressly raised the

---

asserted affirmative defenses included equitable estoppel and/or unclean hands, bad faith, and that FLVS materially breached the Settlement Agreement.  Doc.155:28-30.

domain issue.  Doc.139:17,28-38,41-42; *see* Doc.305:18-20.  FLVS also addressed the issue in *its* summary judgment briefing.  Doc.141:12-13;143:12-13;Doc.171:17-18;Doc.175:23-24.  And it certainly had the opportunity to present any evidence when it moved for reconsideration.  Doc.299:5,12-14;Doc.306:2.  So when FLVS failed to present any evidence to support its vague claim that the redirect infringed, the district court properly granted summary judgment on the claim.  Doc.306:4-7.

## V.    The District Court Did Not Abuse Its Discretion In Limiting Disgorgement.

FLVS alternatively argues that the district court should not have limited Gallogly's disgorgement opinions and FLVS's remedy to profits from Stride's HCSD program for the two years it was named FLOS.  Br.55-57.  But the district court did not abuse its gatekeeping discretion in doing so and holding FLVS's "argument regarding the relevancy of [Stride's] statewide and nationwide profits [was] simply meritless."  Doc.295:5; *see* Doc.306:4-7;Doc.369:36n.33.

FLVS's argument that the district court wrongfully excluded Gallogly's FCCA disgorgement makes no sense.  Br.55-57.  Stride indeed "objected" to such disgorgement on the grounds that FLVS repeatedly admitted it had no claim pertaining to FCCA—a name expressly permitted by the Settlement Agreement.  Doc.267:22;Doc.168:8n.3;Doc.248:79-80.  And FLVS cites nothing for its assertion that FCCA profits "are attributable, at least in part" to any "infringing use" of flva.com as a redirect to FCCA.  Br.56.  Nor could it, because FLVS neither alleged

nor presented any evidence supporting such a claim.  *Supra* § IV; *see Daubert*, 509 U.S. at 591 (Expert testimony must be "sufficiently tied to the facts of the case.").

FLVS's claim to Stride's nationwide profits was equally baseless.  FLVS asserts that the FLOS marks were "available nationwide" and "could have confused consumers outside Florida."  Br.57.  But there was zero evidence they were and did, and FLVS is "not entitled to [Stride's] profits demonstrably not attributable to the unlawful use of [FLVS's] marks."  *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 206 (1942).  Gallogly admitted he did not consider any evidence regarding whether any of Stride's profits outside of Florida actually were attributable to any Florida-centric branding.  Doc.268-2:250,252,282.  There was no such evidence.  Doc.137:4-14;Doc.372:11-12.  Stride did not use any FLOS or Florida-specific branding outside of Florida because it only can enroll students in the HCSD and other Florida programs if they are qualified to attend Florida schools.  Doc:54-2:¶¶5-8;Doc.137-2:349-50;Doc.342:183,185,207.[18]

FLVS then falls back to arguing that if the Court resurrects FLVS's false advertising claim (it should not), *then* FLVS could unlock nationwide disgorgement.  Br.56-57.  But FLVS produced no evidence of national deception—it even limited Stec's survey about the Checklist to Florida only.  Doc.170-3:143-44.  Nor did FLVS

---

[18] "Texas school administrators" or "an Alaskan parent" obviously were not relevant customers of Stride's *Florida* Online School. Br.57.

ever show anyone even could identify FLVS as one of the "other online learning solution" being compared after reference to FLVS was removed, particularly given that FLVS had next to no name recognition outside of Florida.   Doc.150-15:3;Doc.139-18:59-60.

There is no basis for reversal.   Even if this Court could find an abuse of discretion regarding FLVS's disgorgement remedy, it would be harmless error because FLVS could not establish the predicate showings necessary for disgorgement: that (1) Stride's conduct was "willful and deliberate" (quite the contrary); (2) Stride was "unjustly enriched" (zero evidence); or (3) disgorgement "is necessary to deter future conduct" (Stride voluntarily remedied).  *See PlayNation Play Sys., Inc. v. Velex Corp.*, 924 F.3d 1159, 1170 (11th Cir. 2019); Doc.360:28-32;Doc.369:36n.33.   As for profits from FLOS during 2019-2021, "there were none."                Doc.369:36n.33;Doc.354:33-37,80,74-77;Doc.352-66;Doc.352-67;Doc.352-68;Doc.352-69;Doc.352-70.

## VI.    FLVS Presents No Valid Basis For Case Reassignment.

Claiming the district judge expressed "harsh" comments toward it, FLVS requests the case be reassigned if remanded.  Br.57-58.  But commenting accurately on the evidence is no basis for reassignment, and the 13-year history of this dispute demonstrates the judge, who presided over it from inception, acted "fairly and impartially."  *See Comparelli v. Republica Bolivariana De Venezuela*, 891 F.3d

1311, 1328 (11th Cir. 2018).  Reassignment is a "severe" remedy, "only appropriate where the trial judge has engaged in conduct that gives rise to the appearance of impropriety or a lack of impartiality in the mind of a reasonable member of the public."  *Id*.  As in *Comparelli*, "[n]o factor supports reassignment in this case."  *Id*.

FLVS complains about being called a "trademark bully" and the district court noting the "dubious circumstances" under which FLVS's first trademarks were registered.  Br.58-59;Doc.369:11n.12,24n.23,36n.33.  But the judge's statements, "while barbed, do not undermine the appearance of justice."  *AcryliCon*, 46 F.4th at 1331.  They were supported and "related to the legal merits of the case"—where mark strength and intent were central.  *See id*. at 1331-32.  FLVS *admitted* it made a material misrepresentation in its 2010 USPTO applications about offering pre-K services.  Doc.351-15:123-27;Doc.289:14,16;Doc.334:113.  FLVS undisputedly did not use its marks for the K-5 market as early as 2002, despite telling the USPTO otherwise.  Doc.249:7-12;Doc.302:15;Doc.334:7-8,104-05;Doc.363:3-4.

Calling FLVS a "trademark bully" was hardly unfounded either.  *Compare McCarthy* § 11:92 (defining "trademark bullying" as "[o]verly-aggressive enforcement of trademarks"), *with* Doc.352-87:8-9 (FLVS's General Counsel boasting mere months before suing Stride about wielding FLVS's trademarks "aggressively" to "compete, compete, compete" to drive up revenues); *see supra* n.9.

-63-

The rest of FLVS's arguments boil down to dissatisfaction with the trial judge's rulings.  But that "is of little impact; otherwise every reversed case would have to be reassigned on remand."  *Comparelli*, 891 F.3d at 1328; *see Stargel v. SunTrust Banks, Inc.*, 791 F.3d 1309, 1312 (11th Cir. 2015).  The district judge fully afforded FLVS the ability to prosecute its case, including by denying Stride's motion to dismiss, protracted discovery, *Daubert* hearings, summary judgment, and a full trial on the merits (and denying all of Stride's counterclaims). Doc.25;Doc.42;Doc.65;Doc.114;Doc.289;Doc.297:7-24;;Doc.363;Doc.342:125-40;Doc.371;Doc.386.

For a "marathon trademark dispute [thirteen] years in the making" overseen by the same district judge inherently familiar with the case (Doc.369:2), reassignment "would entail significant waste and duplication."  *CSX Transp., Inc. v. State Bd. of Equalization*, 521 F.3d 1300, 1301 (11th Cir. 2008).  The Court should deny FLVS's request.

## CONCLUSION

The Court should affirm the district court's judgment.

Dated: August 8, 2024          Respectfully submitted,

By: /s/ *Steven P. Hollman*

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
Steven P. Hollman
Abraham Shanedling
Maria-Laura Coltre
2099 Pennsylvania Ave., N.W., Suite 100
Washington, D.C. 20006-6801
Tel. (202) 747-1941
Fax (202) 747-3012
shollman@sheppardmullin.com
ashanedling@sheppardmullin.com
mcoltre@sheppardmullin.com

Anne-Marie Dao
12275 El Camino Real, Suite 100
San Diego, CA 92130
Tel. (858) 720-8900
Fax (858) 509-3691
adao@sheppardmullin.com

CARLTON FIELDS, P.A.
Daniel C. Johnson (Florida Bar No. 522880)
200 S. Orange Avenue, Suite 1000
Orlando, Florida 32801-3456
Tel. (407) 849-0300
Fax (407) 648-9099
djohnson@carltonfields.com

*Counsel for Defendants-Appellees*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief uses 14-point Times New Roman font and, excluding the parts of the document exempted by Rule 32(f), contains 12,988 words.

/s/ *Steven P. Hollman*
STEVEN P. HOLLMAN

## **CERTIFICATE OF SERVICE**

I certify that on August 8, 2024, the foregoing brief was filed and served on all counsel of record using the Court's Appellate PACER system.

/s/ *Steven P. Hollman*
STEVEN P. HOLLMAN